Mr. Lee, you have reserved two minutes for rebuttal, so you have eight minutes to begin. Good afternoon, and may it please the Court. Yan-Chan Lee, Federal Defenders of New York, for Appellant Roderick Gunn. This case presents a narrow question of statutory interpretation of divining congressional intent. It concerns Section 1951A of the Hobbs Act, which punishes anyone who, by robbery or extortion, obstructs or interferes with interstate commerce or, quote, attempts or conspires so to do. And the Congress set a maximum of 20 years for each such violation of the Hobbs Act. Now, the narrow question presented on this appeal is whether, when someone is convicted of both inchoate offenses under the Hobbs Act, whether Congress intended to double the penalties, even where those inchoate offenses share the same object, arise from the same course of conduct, target the same four defendants, and concern the same statutory harm, meaning the attempted robbery on Wickham Avenue in the Bronx in January 2003. Why is this different than Kalanen? I'm sorry. Kalanen. Kalanen, respectfully. So Kalanen, respectfully, actually supports our position. So Kalanen is held that separate accumulative punishments can be imposed for a conspiracy as well as a substance of offense. Right. So it helps us in two ways. The first is that the government's rule of decision here is Blockberger, and that's also what this Court's summary order in Colleymore relied on, meaning that the government thinks that just because these offenses are separate under Blockberger, therefore, you know, you can impose accumulative punishments. That's obviously not the rule of decision from Kalanen, because if that were true, then Kalanen would be a two-sentence opinion, right, because we all – everybody accepts that conspiracy and a substance offense have different elements. They're different. Each has a different element. They're different under the Blockberger test. So, therefore, that's not the correct rule of decision. The difference is – Wait, wait, wait. I don't understand why that's not the correct rule of decision. Everyone agrees that the conspiracy and the substantive crime are separate and can be punished separately and cumulatively. Well, the conclusion – the second part of what you said is the conclusion, is the holding of Kalanen. Yeah. But the question in Kalanen was whether, you know, that you could, right? But the point is that if it were such a simple issue that Blockberger resolves this appeal, then why would you even have an opinion at all in Kalanen? Everybody knows they have separate elements. No, because you – I assume that Kalanen made the same sort of argument you're making, that that can't be how it works in this kind of situation.  And the Supreme Court analyzed it and said, yes, it can. Respectfully, Your Honor, that's not what the Supreme Court did. The Supreme Court disagreed with the appellant in that case, but the reasoning was that it actually tracks exactly ours, which is that the statutory language – where the statutory language is kind of silent on the issue, right, just as it's here. When Congress enacted the Hobbs Act and put all this language in there with just a disjunctive or in between them, right, there's really no indication that Congress wanted one way or the other. And so the Supreme Court said, well, we're going to have to break that, right? But then something had to break that tie, right? And what the difference maker in Kalanen is this – and Justice Frankfurter's opinion in Kalanen is all of – the entire opinion explains the deeply rooted historical distinction that we've all accepted even in first-year law school, right? Between conspiracy and substantive crime.  That's right. And we all know this. And why doesn't that same logic apply where the substantive crime is attempted? Because whether it's completed or attempted, it bears the same relationship to the conspiracy, because the conspiracy not only has technically different elements, but it focuses on a different harm than the attempt and the completed crime. Yes, Your Honor. It's also something that we learned in first-year law school, that the attempt and the completed crime are different. That's right. Just as in Prince, a quasi-attempt sort of statute that penalizes the person as soon as he walks into the bank with an intent will merge in the same way as an attempt would into the completed offense. But that doesn't work for conspiracy.  So why is that? So let me answer. So I think – so let's – I'll answer your Kalanen question first, and then we'll talk about the Prince. So there is no – the distinction here is that there's no deeply rooted historical acceptance that these two inchoate offenses of attempt and conspiracy, right, not a completed offense, but two inchoate offenses, that these two – that there's a history or tradition of punishing inchoate offenses that arise from the same incident separately. There is not such a tradition. In fact, if you research the case law on it, the only one I found, and the government didn't find anything to the contrary, was a Ninth Circuit case, TOUW-2 from 1985, that said just sort of a – not a lot of reasoning, but just assume that attempted distribution and the conspiracy distribution, you can't – that, you know, you can't get double punishment under that. I'm not saying that that's the right position. I don't need to say that. All I need to say is that to distinguish myself from Kalanen is that there is not a deeply rooted historical tradition. So when there isn't such a deeply rooted historical tradition, we then go back to   I don't know. Well, but why is – Prince is a very different circumstance. Yes. So yes, Prince is a different – Prince looks much more like the relationship of the attempt to the completed crime than this does. Your Honor, respect – This looks like the relationship of the conspiracy to the completed crime. Yes. Yes, I understand. So I accepted that characterization of the two offenses in Prince. That's one way to characterize it. But Prince is much – is about more than that, not only in its own language, but the way it's been applied subsequently. The Supreme Court applied it in Heflin to not this kind of situation you're talking about. Heflin was about bank robbery and then receiving the proceeds of the bank robbery, right, from the same incident, right? And the Supreme Court said that you can't get two punishments for that. And that's not quite what – But that's – again, it's because the same principles that operate to merge the same sort of thing. It's sort of inherent in the robbery that you're getting the proceeds of the  Those aren't two separate things. But conspiracy has always been seen as a separate thing from the completed offense. And I don't see – I don't see why there's anything in the historical tradition that would say that because they are both in a sense inchoate offenses, they're still different inchoate offenses. And the conspiracy bears, it seems to me, the same relation to the attempt as it does to the completed crime. So you've got the model penal code on your side.  I don't know if you know that or not.  But the drafters of the model penal code wanted that to be the rule. And I don't know of any State that actually bought that piece of the model penal  I'm not sure either. But if I could take a step back, right? Sure. So we can have a reasonable dispute about this. But our position is that the tie goes to the runner here, right? The tie goes to the defendant here. That's what Prince says. And it's kind of a version of the rule of lenity, but not the typical statutory ambiguity version of the rule of lenity. But the lenity that rises sort of out of the penumbra of the double jeopardy clause, this notion that doubt should be resolved against, you know, taking – construing multiple offenses and imposing multiple punishments out of a single criminal act. But, I mean, you say tie goes to the defendant. But, I mean, I don't buy your argument that it is a tie for the reasons that Judge Lynch was saying, that if you look at the characteristics of the various crimes we're talking about, the one is the relationship of attempt to conspiracy is more like the relationship of conspiracy to the completed crime. I'm just saying that. So it's not a tie. Well, respectfully, if we go back to Prince again, okay, what Prince is really comparing, okay, is its term is that whether these offenses share the same heart. It talks about the heart of the crime. It talks – it uses the word the gravamen of the offense. But then again, isn't that exactly what we're talking about here? Yeah. Is the gravamen of conspiracy is somewhat different than the gravamen of attempt. You're – that's because you're looking at a kind of a higher level of abstraction, right? Well, what's the difference between the gravamen of the attempt and the gravamen of the completed crime? But we – yes. But that's always true. Any time there's two separate offenses under the Blockberger test, right, we acknowledge that they're conceptually distinct offenses. No, no. I'm saying that you're saying that the gravamen is the same for the attempt and for the conspiracy. Meaning – And it would seem to me that that argument would apply just as well to the substantive completed offense, right? You're right. So, yes. But that – the difference – I think you're trying to argue something that would require us to not stack these. But that ship has passed on the completed ones, right? Yes. It has passed on the completed ones. Yes. Agreed. But when you look at – so the gravamen of the offense here is not – you know, I understand. Attempt is about substantial stuff for an individual, right? Conspiracy is about agreement. I understand that. At that general level, there's a difference. But what you have to do is look at in this particular statute, what is – what's the statute? What's the unit of punishment that Congress is intending under the statute? And the unit of punishment is clearly the obstructive conduct, the obstructive incident. Whether – so what happened here was that there was four people who tried to rob this – this place, right? You know, when four people – I'm sorry. Just to make it clear, you're saying the gravamen of the offense is the effect on interstate commerce. It's the obstructive incident. The Hobbs Act sets out a 20-year penalty for each – each attempt or conspiracy to obstruct commerce by robbery or extortion. That's – that's the unit of punishment. We're not talking about the unit of prosecution where we have no objection to being separate counts. The question is whether Congress intended to double the penalties just because you can chop up, right? It's a four-person attempted robbery. That isn't almost necessarily also a four-person conspiracy, right? And the question is, did Congress want to double the punishment for that just because you can –  Did Congress intend to have the same kind of result that would apply with respect to any other conspiracy and completed crime? Because, after all, as Judge Sotomayor pointed out, the ship has already sailed on your argument would it also apply to the completed offense and the conspiracy? Except, yes, except – There's only one obstruction of – Yes, I understand. But the difference – the difference maker from – in Calumet in terms of the deeply rooted tradition, Justice Frankfort is entirely about how throughout history we've all acknowledged that the substantive offense, the completed offense is distinct from the conspiracy for punishment and other purposes. Your argument – And that's not true here. You are loading the deck by saying it's a four-person attempt. Therefore, it's by definition a conspiracy as well. Well, the attempt doesn't require that it be four persons. It happened to be four persons. I understand. But we're talking about the crime of attempt, and it could just as well have been one person, one person – Absolutely. Absolutely, Your Honor. And that's a different crime. Yeah, but – A crime of conspiracy that requires more than one person. Absolutely, Your Honor. But that's a different case. If this – if the attempted robbery in this case was, you know, was some lone – lone ranger kind of thing done by Mr. Gunn, you know, there was an overall conspiracy in which these people planned these robberies and then Mr. Gunn decided to do this other thing. It was part of it, but he did it himself. But what – Isn't the conspiracy also different in that the conspiracy here goes beyond any one of the particular attempts? Again, theoretically, it does. Yes, it has a longer time frame, but again – Well, and so why – doesn't that undermine your argument that as a factual matter, put aside the elements of the offense, as a factual matter, this is the same thing? It's a four-person robbery and a four-person conspiracy. But it's actually a different conspiracy because the conspiracy does not – is distinct from any individual attempt. It's a conspiracy more broadly to engage in a series of robberies. So, Your Honor, that's all – that's true in all these cases. So even in Prince, right, the Prince is the entry into the bank, right, and then – with intent to rob – and then the robbery itself. But it was the same robbery. Yeah, but it's – It wasn't as if he entered Bank A with the intent to rob Bank A and then separately went and robbed Bank B. What I'm suggesting is this conspiracy, even if there was some merit, if this was a rifle-shot conspiracy, that there's only one robbery, four people do it, they conspire to do it first, then they actually do it, and they either complete the robbery or they don't. That's one story. It's a very different story if we're talking about there is this one attempt that is one singular crime, but they've also got a broader conspiracy that extends beyond even the attempts and completed robberies that are charged as separate counts. Your Honor, so I would – I think – okay. Now, I think I understand your question. I was thinking – I thought you were asking a different question. So this is a very particularly drawn indictment, okay? And it was drawn narrowly, as the government acknowledges, and as this Court actually held in an interlocutory appeal back in 2010, for a particular reason, to avoid a different double jeopardy problem. So Mr. Gunn was indicted on an 03 indictment with a – he was charged and pled guilty as he was trying to cooperate with the government to a conspiracy to commit Hobbs Act robbery, which involved a whole bunch of robberies, okay? And then during his cooperation failed because the government learned that he had with Davis, which involved the murders. And so when the government charged him with this indictment, an 06 indictment, he filed an interlocutory appeal saying it's double jeopardy. So you're saying the premise of my – the factual premise of my question was incorrect. Yes. That this is a conspiracy only to do this one attempted robbery. Well, it was – because it's charged as a conspiracy – two robberies, two attempted robberies, right? It was a conspiracy to commit two attempted robberies. The two attempts to count two encounters. Well, then doesn't that still work? Because it's a conspiracy to do two robberies, and then there are two specific robberies, but each one is less than the overall conspiracy that encompasses both. Well, Your Honor, so I wouldn't be here if he – but he was acquitted of one of the attempts. Right? So what we're left with is a conspiracy with one object. Well, that doesn't follow, actually, does it? It doesn't necessarily. If he was – if he was acquitted of the attempt, that doesn't mean that he wasn't part of a conspiracy to do that one. Agreed. It's not – it doesn't necessarily follow, and we can't tell because there's a general verdict on the count – on the count one conspiracy, right? We don't know which object. But the jury perfectly well could have concluded that he was part of a conspiracy that encompassed both of these things because they were all discussed, but he didn't show up for one of them. Agreed. So therefore, he wasn't guilty of the attempt in that one. But he might well have been guilty of the conspiracy to engage in that robbery of which he – attempted robbery of which he was part. I agree. It's a possible reading of the verdict, but respectfully, it's not the more reasonable reading. And given the nature of the government's – But isn't the – I thought the evidence was, in effect, that the problem was he backed out. Yes. So that doesn't make him not guilty of the conspiracy. I understand. But, you know, the government doesn't make this argument, I would say, on appeal, right? The government acknowledges that – I don't think it needs to because I think the argument fails for a whole bunch of other reasons. But this seems to me to be one of them, that this is not quite what you're suggesting it is, where there is a limited conspiracy to do one thing, and that one thing then gets done – well, not done, but attempted, and that's different than if it's the one thing that they actually complete. I believe the government, as the party that prosecuted the case and knows the evidence, the fact that he didn't make this argument, I believe, is the best indicator of the proper reading of this verdict. But they don't have to. If there's no difference between a tie and a substantive, and Congress never intended there to be any, when – with respect to conspiracy and double – and stacking, then they don't need to get to any of these other arguments, right? Well, that's right. But –  Let's hear from Ms. Chang. Maybe she'll have some new things up her sleeve. You'll get a chance to respond with two minutes rebuttal. Thank you, Mr. Lee. Ms. Chang. Good morning, and may it please the Court. My name is Jane Chong, and I'm an assistant U.S. attorney for the Southern District of New York. I'm sorry. I mispronounced your name. Oh, not at all, Your Honor. I represent the United States on appeal, and I represented the United States below. I would like to clarify a number of points of law and fact, but before I get to that, I think it's worth starting with the significance of the standard of review in this case, because just a few minutes ago, the appellant stated, we have a reasonable dispute about this. The problem with that is that this issue is before the court on plain-air review. In other words, even if this court were to agree with the appellant that Judge Hellerstein erred in running the conspiracy and attempt counts, the sentences consecutively, the appellant, by his own admission, can't establish that the error was plain. To be plain, the alleged error must be clear or obvious rather than, quote, subject to reasonable dispute. Here, Judge Hellerstein's alleged error could not have been clear or obvious when the alleged error falls perfectly in mind with reasoned decisions by this court. But I think it's equally telling that by the appellant's own concession, this is a reasonable dispute issue. This is a situation in which the appellant is actually stating that this court has repeatedly misread prints, at minimum, this conceded conflict between the court's decisions, including a precedential decision in Weingarten, and the appellant's argument amounts to a reasonable dispute. So that actually is fatal to the claim. That said, I do think it's very clear on the law that Judge Hellerstein correctly ran the sentences consecutively. And so I'd like to clarify the rule that actually applies in this case and how it is that the appellant is misreading prints to get around that rule. So the appellant has suggested that the test here turns on Blockberger. That's actually an incomplete understanding of the law. Under the law of this circuit, a court may indeed impose consecutive sentences for an attempt in a conspiracy, but that's the clear outcome of a very well-established three-part test. It was first established by the Supreme Court in the 1981 decision, Albernaz, and then further explained by this court in the 1982 decision, Morale. The reason I note the years, Your Honors, is those decisions both came out after Calinan. So that explains why neither of those decisions are referenced in Calinan. So the first step is if the offenses are in different provisions of the statute, the presumption is that Congress intended for there to be separate consecutive punishments. That is, of course, not the case here. The appellant attaches great significance to the fact that the offenses appear in the same statutory provision, and that's why I think it's notable that the court did not attribute equal significance to that situation. Nowhere does the Supreme Court or this court suggest that the rule is somehow flipped if two offenses appear in the statutory provision, that the presumption is somehow flipped. The second step is application of the Blockberger test, the test that requires determining whether each offense requires proof of a fact the other does not. Third, after the Blockberger test is satisfied, the court consults the legislative history. And importantly, if the congressional record is silent on the congressional intent, then the presumption is that Congress intended to authorize multiple punishments. So this is really a question of what is the presumption? It's very clear from this case law that the presumption in the face of congressional silence is consecutive sentences. That is the rule that the appellant is trying to get around. How does he do it? He does it the way certain appellants before him have tried, by misreading this Supreme Court's decision in Prince. So I do want to lay out what Prince actually says. The holding of Prince is this. When Congress made either robbery or an entry for that purpose a crime, it intended that the maximum punishment for robbery should remain at 20 years. But even if the culprit should fall short of accomplishing his purpose, he should be imprisoned for 20 years. So the appellant misreads that holding to say Prince's core holding is that where two offenses are set forth in the same provision or clause, the presumption is Congress did not intend multiple punishments when the offenses are based on the same core facts. There are two core problems with this reading of Prince. First, as I just noted, the applicable rule is actually the opposite. In the face of silence, the presumption is that consecutive sentences are permissible. But the second problem, of course, is this Court's very careful and reasoned and comprehensive decision in Weingarten, where it did not interpret Prince that way at all. The Weingarten Court acknowledged that per Prince, in the case of certain unique offenses, and that's the word the Court used, unique statutes, consecutive sentences are not permissible. But it then articulated exactly what kind of statutes it was referring to. Two offenses merge and may not be sentenced consecutively only when they are a single undertaking. So, in effect, the Court did not think Congress wanted a person to be punished twice for an offense and, for example, it's lesser included offense. That's, I think, the most accurate reading of Prince. It's in Black and White and Weingarten. And, moreover, if we think about it, it's a very logical principle. It's the same principle in Calinan. Then, just removing all possible doubt, the Weingarten Court goes on to explain when the Prince rule does not apply. Prince's limited rule is inapplicable where the two offenses are distinct crimes and cannot be characterized as a preliminary step and consummated act. Of course, this is a very big problem for the appellant because conspiracy to commit Hobbs Act robbery and attempted Hobbs Act robbery are clearly not a preliminary step and a consummated act. They are not successive stages in a single undertaking. So it could not be clearer under Weingarten, a precedential decision, that Prince has no application in this case. What does that mean? It means the three-part test set out in Morale applies. So I do want to address a few additional issues because I think there was a colloquy with Judge Lynch about whether conspiracy and attempt are the same offense. They are different, both as a matter of law, but also I think the underlying facts here really highlight the distinction. So as a matter of law, the Court has explained that the essence of a conspiracy is the agreement between two people to commit the crime. The essence of an attempt is an individual's movement toward or substantial step toward completion of the crime. We can all agree, and I think the appellant concedes, that the Blockberger test is satisfied. So then I think the question is, what is the next step? And that's where we apply Morale, and we conclude that because the congressional intent is not clear, the record is silent, we must assume, we must presume that Congress intended to allow consecutive sentences. Now, I want to turn to the facts of this case because I think it helps illustrate that this distinction is not just a legal technicality. These are truly different crimes. The robbery conspiracy charged in Count I took place from the summer of 2002 until January of 2003. It actually encompassed about six violent robberies and attempted robberies. And the last one was the January 2003 attempted robbery that is the basis for Count III, the attempted robbery charge. Now, I think it's very obvious from that description that the conspiracy encompassed more than the attempted robbery in January. I don't think we even need to really discuss that. But I think it's equally clear that the attempted robbery isn't just subsumed into the conspiracy because it required Mr. Gunn to take substantial steps toward completion of that day's robbery. That was required to be convicted for the attempted robbery, but it was not required to be convicted for the conspiracy. I do think that it's also worth noting, Your Honors, that this is a case that could also be decided on other grounds. It's very clear, for example, that the appellant invited the error that he now complains of. By that I mean he represented to the district court that it is appropriate to run the sentences consecutively for Counts I and III when he urged the court to find that the statutory maximum of all the counts was 80 years. He now states that that was unintentional, it was a mistake. But I think if you take that logic to the extreme, it would mean that every invited error, or really every waiver, could be vitiated by the defense's claim that he just didn't understand something, that he made some kind of mistake. And on this point, I do want to direct the court's... When you say he made that representation to the court, he told the court that 80 years was the maximum in support of what? He made that in support of what argument to gain what decision from the court? He made that argument, and the government agreed the statutory max was 80 years, in light of the fact that in the pre-sentence report, the probation had erroneously stated that the guidelines range, the guideline sentence was life. Because after the vacator of two of the convictions, the statutory max of the remaining counts was actually capped at 80 years, the guideline sentence actually changed. It went from lifetime imprisonment to 80 years. Are you arguing a waiver here? We are arguing waiver, Your Honor, and specifically we're arguing... You started out by saying, you know, it's not plain error, and you used Mr. Lee's words against him to say he's basically conceded this is not plain error, but now you're coming back and saying, really, we don't even consider this as waived. That's correct, Your Honor. Actually, this court in Young stated, we are reluctant to reverse for plain error when it is invited. In other words, this court has a whole menu of options for rejecting the appellant's claim. First... His real point made to the judge when he said the maximum is 80 years, is that life is not an option, and he might as well have said not much distinction between what he said and if he said the maximum is at most 80 years or 40 years. He was saying to the court that there is a maximum imposed, which is measured in terms of numbers of years, so you can't impose life. Your Honor, I think it's fair to say that the appellant did not mean to make a representation to the court about the statutory maximum being 80 years as opposed to 60 years, but I think it is very clear that he intentionally represented that the two counts could be run consecutively. And so I think this is a really good opportunity to consider what... But there's nothing to gain from that, though. This wasn't a case where he was saying, don't throw me in this briar patch because you have enough sentencing room or something like that. It was as a matter of law. It's that the guideline is not life. The statutory maximum is not life. The maximum is a term of years. At most, it seems to me, what he's doing there is failing to raise the argument that the sentence that the judge eventually imposes is beyond what is authorized. That gets us to plain error review. But I hardly think that that is a strategic choice to gain something by acknowledging that 80 years is the right answer. Your Honor, I'm glad you brought that up because I think the key point here is actually that it need not be a strategic choice to amount to invited error. And I think the clearest case on this is actually the case cited in the appellant's reply brief, Spruill. It's a precedential decision from 2015, which actually goes into what constitutes intentional relinquishment of a right. The language there is very helpful because it makes clear that there are actually different ways to waive a right. The language is, various circumstances can manifest a defendant's intentional relinquishment of a known right. The court then goes on to provide two different examples of such circumstances. First, there is waiver where a party actively solicits or agrees to a course of action that he later claims was error. So even though the court doesn't use the words invited error, that's clearly what the court is talking about. But he didn't actually solicit an 80-year sentence. I think what he did, Your Honor, is he invited the court to run the counts, which added up to an 80-year sentence. In other words, it's true that what he was trying to do was to get to the statutory max, but in order to do it, he had to run the counts appropriately. And he communicated to the court that he believed these counts could be consecutive. What sentence, if any, did the defendant ask for? Your Honor, I believe that apparently I just conferred at the Pellant, and he asked for a time served. Yeah, so he wasn't asking for consecutive sentences. He didn't say time served, give or take 80 years. That's true, Your Honor. But this is why I want to point to the second example that was set out in Spruill. Spruill makes clear that there are different kinds of waiver. The first one is invited error. It then goes on to say, we have also recognized waiver where a party makes a tactical decision not to raise an objection. So this is where the tactical error precedent comes in. That's another way to waive. It's still a tactical decision as opposed to an inadvertent failure to raise an argument that the lawyer didn't think of or didn't think much or had thought of but decided, well, I'm probably going to lose on it or something. This is – I think you were better off before you ran over your time and started talking about this when you'd already said it's plain error. That's a lot to say. Your Honor, well, I do see that I'm at the end of my time. You're at the end of your time. You're way over. But that's all right. We haven't been strict today. The government will rest on its recognition. You were almost saved by the bell, but you decided not to be. Mr. Lee. I have no chance to be saved by the bell, but I'm going to take my two minutes. So I have to defend my honor. Our claim of plain error is that it's based on the plain principle of Prince, which says that if there is a reasonable dispute about whether Congress intended it, then we win. So I did not concede anything on that?  The second is this issue of block broker. Let's – Well, it's still – there's other things that are problems for plain error, right? Yes. We also have culling work. Now, I realize that we like to pretend that summary orders go down the memory hole, like in 1984, and don't have any meaning or anything. But it certainly suggests that if your argument is so plain, it's a little surprising that a panel got fooled. Well, so again, it's – non-presidential is non-presidential, Your Honor. So – but the other point, if the Court is concerned about this, Colleymore filed a cert petition a month after our reply brief. The Supreme Court ordered response. It's been fully briefed. It's in conference November 7th. Okay? It's the Supreme Court docket 24-1196. But I would like to address a couple more points before my time runs out. Block broker creates a single negative presumption. It's based on the double jeopardy clause, right? The double jeopardy clause does not prefer multiple punishments or promote multiple punishments or mandate multiple punishments. It's solely a single negative prohibition against multiple punishments for the same offense. So block broker has only one presumption, which is that when offenses are the same under block broker, then there is a presumption that Congress did not intend to impose multiple penalties. Of course, Congress still could, but that's the presumption. There is not the converse presumption that all those cases that mention that there is this presumption that if offenses are separate under the block broker test, then there's a presumption that Congress intended to allow cumulative punishment. That is not true. Well, wait. You're saying there are all these cases that say that, but they're all wrong. They're wrong. No, they misrely on block broker. What they're really relying on is what my friend mentioned. And it's a different kind of presumption that Justice Rehnquist talked about in Garrett, which is that this is a very commonsensical notion that when Congress enacts separate laws.  Yes. When Congress creates separate crimes. That's right. But separate laws at different times for different purposes, there is a presumption that, yes, cumulative punishments are okay. Why doesn't the same thing apply when Congress creates multiple crimes at the same time? The argument, what the courts are saying in those many cases that use the block broker test in this way, yes, block broker is a rule that comes under the double jeopardy clause. But when courts then say if things are separate under the block broker rule, then we presume that Congress created meant to allow multiple punishments because Congress created separate offenses. So when they create separate offenses, they're separate. But this Court in Gore from 1998, which precedes Weingarten, right? What this Court said is that you just look at the plain language of block broker itself. It says that the test is concerns offenses established in separate statutory provisions. And what this Court said in Gore was that, remember, Gore was comparing two offenses, distribution and possession with intent to distribute, which occur in the same provision, just like the attempt and the case. And again, Gore is a case that's like Prince, isn't it? It's not, Your Honor, respectfully. It's not sequential at all, right? It is a single sale that's the proof of both a possession with intent and a distribution. But these offenses at the moment he was distributed. It's not sequential, Your Honor. So it's not. It's sequential or simultaneous. It's the same sort of problem. What is happening here is that necessarily encompassed in any distribution is that you possess either actively or constructively the things that you are distributing because otherwise you can't distribute them to someone if you don't have control of them. I understand. We're going to have a different – we have a disagreement about this. I think that what Gore shows is that the reading of Prince, the narrow reading of Prince in Weingarten, that it only is sort of this chronology argument. There's sort of a sequence of events is wrong. And that what really matters, again, is what the gravamen of defense or the heart of the crime. And the heart of the crime here is one single episode of forcible obstruction of Congress. I think the possession does have to come before the distribution, doesn't it? It does. Well, it is sequential. I mean, the actual evidence is about he had it and he gave it over. But he has to have it before he gives it over, just as you have to enter the bank before you rob the bank. I understand. I would, again, say that in Prince, the real point is talking about the unit of  What did Congress intend as the unit of punishment in the Hobbs Act? And our view is that it's the incident of obstructing Congress. And the fact that you can chop that up into an attempt, two different inquiry defenses, doesn't mean you can double the penalties. I'll rest on my papers for the waiver point. Thank you. All right. Thank you both. We will reserve decision. That concludes our marathon.